MARY C. PARRISH v. THE BOYSELL MANUFACTURING
COMPANY ET AL.

(Filed 16 December, 1936.)

**1. Master and Servant § 23: Principal and Agent § 10—Liability of master or principal for wrongful acts of servant or agent.**

A master or principal is liable for torts committed by his servant or agent in the scope of his employment and in furtherance of the superior's business, or which are authorized or ratified by the superior, but the master or principal is not liable to third persons for wrongful acts of the

servant or agent committed outside the legitimate scope of the employment and without specific authority from or ratification by the superior.

**2. Principal and Agent § 7—**

Testimony of declarations of an alleged agent are incompetent to prove either the fact of agency or the nature and extent of the authority, but the direct testimony of the alleged agent is competent on either question.

**3. Same—Evidence held to disclose that agent was not authorized to imprison plaintiff.**

Plaintiff testified that the individual defendant, an assistant superintendent, stated she had talked with the manager of the corporate defendant over the phone and had been *authorized to search plaintiff and others* for wages paid two employees which had been lost. The individual defendant testified that she had not been authorized to search plaintiff. *Held:* The testimony of the declarations of the individual defendant was incompetent as hearsay, while her direct testimony as to the nature and extent of her authority was competent, and the competent evidence establishes that the corporate defendant did not authorize or ratify the individual defendant's act of searching plaintiff.

**4. Master and Servant § 23: Principal and Agent § 10—Evidence held to disclose that search of plaintiff was outside scope of agent's authority.**

The evidence disclosed that the wages of two employees which had been paid them by the corporate defendant had been lost and that all employees in the room had been searched in an effort to recover the money, and plaintiff contended that she did not voluntarily submit to the search but was forced to submit thereto by the assistant superintendent of the corporate defendant. *Held:* The money did not belong to the corporate defendant, but to the two employees who had lost it, and the search of plaintiff was outside the scope of the assistant superintendent's authority, the recovery of the money not being in furtherance of the corporate defendant's interest, or within the scope of the assistant superintendent's authority.

**5. False Imprisonment § 2—**

Conflicting evidence on the question of whether the individual defendant forced plaintiff to submit to a search for money of two employees which had been lost, takes the case to the jury as to the individual defendant, *and the fact that the liability of the corporate defendant was erroneously submitted to the jury in the action cannot avail the individual defendant.*

**6. False Imprisonment § 1—**

Involuntary restraint and its unlawfulness are the two essential elements of the offense of false imprisonment, which generally include assault and battery, and must include a technical assault at least.

APPEAL by defendants from *Hill, Special Judge,* at May Term, 1936, of GASTON.

Civil action for false imprisonment or false arrest.

The corporate defendant is engaged in the manufacture of rugs, mats, bedspreads, etc., and employs a number of women, 40 or 50, to operate

its sewing machines. The night shift works from 5:15 p.m. to 1:45 a.m., with half an hour for lunch from 9:30 to 10:00 o'clock. The plaintiff was so working on the night of 8 February, 1936, when Miss Elaine Tucker, "Assistant Superintendent in Charge of the Girls' Room," or "Instructor" to see that right colors are used, announced that two of the girls had lost their weekly wages, which had been paid to them that night, and suggested that a search be made to see if the money could be found. This was done. They went through each spread which had been made that night.

Plaintiff testifies: "Miss Tucker said that she had talked with Mrs. Fuller over the phone and that Mrs. Fuller had given her instructions to fasten the doors and search everyone. (Objection and motion to strike; overruled; exception.) . . . I said, 'Well, she can't do that.' . . . I told Miss Tucker that I did not want to be searched and that I did not have the money and knew nothing about it. . . . Then I said, 'Well, if it has to be done and I can't go home, come on and let's get through with it, so that I can go home.' . . . It was after 2 o'clock and we went over into another room where Miss Tucker searched me. . . . Miss Tucker said she had called two policemen."

Cross-examination: "We were all wanting the girls to get their money. We were all willing to coöperate. I wanted to be free from suspicion, but I was not willing to be searched."

Miss Tucker's testimony is somewhat different: "All the employees in the room unanimously asked to be searched. No one objected to being searched. Mrs. Parrish asked to be searched. . . . I did not touch her; she asked me the second time to search her. . . . I did not have authority to search them. . . . I was not carrying out Mrs. Fuller's instructions."

Mrs. L. B. Fuller is secretary and treasurer and local manager of the corporate defendant. She was at home on the night in question, confined to her bed with the "Flu." She knew nothing of the occurrence until it was all over. Miss Tucker never talked with her until after the search had been made, and no authority was given to Miss Tucker to make the search. "The Boysell Company had no interest in this money. . . . It did not belong to the Boysell Company, but to the girls. . . . Neither was it of any benefit to Elaine or myself whether they found it." No money was ever found.

At the close of all the evidence, the motion for judgment of nonsuit was allowed as to Mrs. L. B. Fuller, and overruled as to the other defendants.

The jury, in response to issues submitted, found that the plaintiff had been "unlawfully arrested and falsely imprisoned" by the defendants, Elaine Tucker and the Boysell Company, and awarded compensatory damages in the sum of $116.00.

Judgment for plaintiff, from which the defendants appeal, assigning errors.

*A. E. Woltz and A. C. Jones for plaintiff, appellee.*
*S. B. Dolley and P. W. Garland for defendants, appellants.*

STACY, C. J., after stating the case: Two questions are presented by the appeal of the corporate defendant.

1. Was Elaine Tucker acting within the course of her employment or the scope of her authority as an employee of the defendant company in searching the plaintiff? The answer is, "No." *Lamm v. Charles Stores Co.,* 201 N. C., 134, 159 S. E., 444; *Daniel v. R. R.,* 136 N. C., 517, 48 S. E., 816.

2. Was Miss Tucker specifically authorized to make the search in question? The answer is, "No."

We had occasion to examine anew the meaning of the expression "course of employment," or "scope of authority," as applied to variant fact situations, in the recent cases of *Robertson v. Power Co.,* 204 N. C., 359, 168 S. E., 415; *Lamm v. Charles Stores Co., supra; Dickerson v. Refining Co.,* 201 N. C., 90, 159 S. E., 446; *Martin v. Bus Co.,* 197 N. C., 720, 150 S. E., 501; *Grier v. Grier,* 192 N. C., 760, 135 S. E., 852; *Gallop v. Clark,* 188 N. C., 186, 124 S. E., 145. An exhaustive discussion of the subject appears in *Stewart v. Lbr. Co.,* 146 N. C., 47, 59 S. E., 545. See, also, *Sawyer v. R. R.,* 142 N. C., 1, 54 S. E., 793.

"A servant is acting in the course of his employment when he is engaged in that which he was employed to do, and is at the time about his master's business. He is not acting in the course of his employment if he is engaged in some pursuit of his own. Not every deviation from the strict execution of his duty is such an interpretation of the course of employment as to suspend the master's responsibility; but, if there is a total departure from the course of the master's business, the master is no longer answerable for the servant's conduct." Tiffany on Agency, p. 270.

It is elementary that the master is responsible for the tort of his servant which results in injury to another when the servant is acting by authority or within the scope of his employment and about the master's business. *Roberts v. R. R.,* 143 N. C., 176, 55 S. E., 509. Thus, where a servant, acting with authority or within the scope of his employment, wrongfully procures the arrest of a person, the master is liable in damages for such arrest and imprisonment. The position finds support in the following cases: *Brockwell v. Tel. Co.,* 205 N. C., 474, 171 S. E., 784; *Kelly v. Shoe Co.,* 190 N. C., 406, 130 S. E., 32; *Riley v. Stone,* 174 N. C., 588, 94 S. E., 434; *Bucken v. R. R.,* 157 N. C., 443, 73 S. E., 137;

*Berry v. R. R.,* 155 N. C., 287, 71 S. E., 322; *Jackson v. Tel. Co.,* 139 N. C., 347, 51 S. E., 1015; *Lovick v. R. R.,* 129 N. C., 427, 40 S. E., 191; *Hussey v. R. R.,* 98 N. C., 34, 3 S. E., 923; *Sawyer v. Jarvis,* 35 N. C., 179; Annotation, 35 A. L. R., 647; 25 C. J., 500.

On the other hand, it is equally well established that the master is not liable if the tort of the servant which caused the injury occurred while the servant was engaged in some private matter of his own, or outside the legitimate scope of his employment, and without specific authority from the master. *Bucken v. R. R., supra.* As illustrative of this position, the following cases are apposite: *Ellis v. Trust Co.,* 209 N. C., 247, 183 S. E., 368; *Lamm v. Charles Stores Co., supra; Butler v. Mfg. Co.,* 182 N. C., 547, 109 S. E., 559; *Powell v. Fiber Co.,* 150 N. C., 12, 63 S. E., 159; *West v. Groc. Co.,* 138 N. C., 166, 50 S. E., 565; *Daniel v. R. R., supra; Moore v. Cohen,* 128 N. C., 345, 38 S. E., 919.

Coming, then, to the record before us, it is a rule of universal acceptance that extrajudicial declarations of an alleged agent are inadmissible to establish either the fact of agency or its nature and extent, such statements being regarded as hearsay and offered for the purpose of proving the truth of the factual matter therein asserted. *S. v. Lassiter,* 191 N. C., 210, 131 S. E., 577; *Fay v. Crowell,* 184 N. C., 415, 114 S. E., 529; *Adams v. Foy,* 176 N. C., 695, 97 S. E., 210; *Jackson v. Tel. Co., supra; West v. Grocery Co., supra; Daniel v. R. R., supra; Summerrow v. Baruch,* 128 N. C., 202, 38 S. E., 861; *Taylor v. Hunt,* 118 N. C., 168, 24 S. E., 359; *Gilbert v. James,* 86 N. C., 245; Annotation, 80 A. L. R., 604; 2 Am. Jur., 352. "That an agency must be proven *aliunde* the declarations of the alleged agent is elementary law (*Grandy v. Ferebee,* 68 N. C., 362; *Taylor v. Hunt,* 118 N. C., 168), and this is true both as to the establishment of the agency and the nature and extent of the authority"—*Clark, C. J.,* in *West v. Grocery Co., supra.* Hence, the testimony of the plaintiff, quoting Miss Tucker as saying "she had talked with Mrs. Fuller over the phone and Mrs. Fuller had given her instructions to fasten the doors and search everyone" was inadmissible as against the Boysell Company, and should have been excluded as to it. It will be disregarded in considering the appeal of the corporate defendant. *Mason v. Texas Co.,* 206 N. C., 805, 175 S. E., 291.

Conversely, proof of agency, as well as of its nature and extent, may be made by the direct testimony of the alleged agent. Therefore, the testimony of Miss Tucker was competent. *Jones v. Light Co.,* 206 N. C., 862, 175 S. E., 167; *Allen v. R. R.,* 171 N. C., 339, 88 S. E., 492; *Sutton v. Lyons,* 156 N. C., 3, 72 S. E., 4; *S. v. Yellowday,* 152 N. C., 793, 67 S. E., 480; *Hill v. Bean,* 150 N. C., 436, 64 S. E., 212; *Machine Co. v. Seago,* 128 N. C., 158, 38 S. E., 805; 2 Am. Jur., 353.

Viewed in the light of the above principles, it appears that the record is barren of any authorization or ratification on the part of the Boysell Company of plaintiff's alleged arrest and imprisonment. *Dickerson v. Refining Co., supra.* It is the holding in *Md. Cas. Co. v. Woolley,* 36 Fed. (2d), 460, that "liability of the principal for act of the agent in causing false arrest or imprisonment is dependent on whether principal previously authorized or subsequently ratified act, and whether act was within scope of agent's employment." All the competent evidence tends to show that Miss Tucker was without authority from her employer to make the search in question; also that she went beyond the course of her employment and for the moment departed from her master's business. *Grier v. Grier, supra.* It was no part of her duty to recover the lost wages of the two employees, even if it had been the money of her employer, which it was not. The money belonged to the two girls who had lost it, and not to the defendants. It would not have profited them had the money been found. Its loss was not their loss. " 'In the absence of express orders to do an act, in order to render the master liable, the act must not only be one that pertains to the business, but must also be fairly within the scope of the authority conferred by the employment.' Wood, Master and Servant, 546. For illustration, a clerk to sell goods suspects that goods have been stolen, and causes an arrest to be made. The master is not liable for the imprisonment or for the arrest, because the arrest was an act which the clerk had no authority to do for the master, express or implied"—*Faircloth, C. J.,* in *Willis v. R. R.,* 120 N. C., 508, 26 S. E., 784.

It follows, therefore, from what is said above, the demurrer to the evidence interposed by the corporate defendant should have been allowed.

The case against Elaine Tucker stands on a different footing. She assumed responsibility for the search, and while the plaintiff, on cross-examination, very nearly testifies to a voluntary search, which would have rendered it harmless on the principle of *volenti non fit injuria, Riley v. Stone, supra,* still, taken as a whole, the evidence on the point is sufficiently equivocal to require its submission to the jury. It is unfortunate, perhaps, that the corporate defendant was allowed to remain in the case, nevertheless, as presently presented, this cannot avail the individual defendant. As to her, the demurrer to the evidence was properly overruled. *Riley v. Stone, supra.*

"False imprisonment is the illegal restraint of the person of any one against his will"—*Ashe, J.,* in *S. v. Lunsford,* 81 N. C., 528. It generally includes an assault and battery, and always, at least, a technical assault. *S. v. Reavis,* 113 N. C., 677, 18 S. E., 388. Involuntary restraint and its unlawfulness are the two essential elements of the offense. *Riley v. Stone, supra;* 25 C. J., 443; 11 R. C. L., 791. Where no force

or violence is actually used, the submission must be to a reasonably apprehended force. . *Powell v. Fiber Co., supra.*

The result, then, is an affirmance in part and a reversal in part of the judgment below.   The costs of the appeal will be divided between the plaintiff and the individual defendant.

On appeal of the Boysell company, Reversed.

On appeal of Elaine Tucker, No error.